C. P. MEREDITH, Appellant, v. FRANK A. SCHMIDT et al., Appellees.

842

DECEMBER 13, 1927.

REHEARING DENIED MARCH 17, 1928.

*C. A. Meredith* and *Dalton & Knop*, for appellant.

*Swan, Martin & Martin*, for appellees.

MORLING, J.—The infirmities in the assignment of the note and mortgage claimed to leave it open to attack by creditors are that the defendant Frank, with intent to defraud creditors, made the assignment, and defendant Frankie, "with the like intent, and without paying any consideration therefor whatsoever, and for the specific purpose of unlawfully aiding and assisting the said defendant Frank A. Schmidt in placing his property beyond the reach of his creditors in general, and of this plaintiff in particular," took and accepted it. Plaintiff recovered judgment against Frank A. Schmidt October 10, 1923, for $2,681.14, on which he realized on execution $1,000, leaving a balance unpaid of about $1,700. The amount of the note and mortgage, assignment of which is attacked, was $2,200.

The assignment was made March 8, 1924. Petition herein was filed December 12, 1924, and alleges that, on November 29, 1924, general execution was issued, and has been returned wholly unsatisfied; that Frank A. Schmidt "is at this time, so far as his possession of any property of which the said judgment may be satisfied is concerned, wholly insolvent." The plaintiff introduced as his witnesses the two defendants Frank A. Schmidt and

Frankie M. Schmidt. Their testimony is that Frankie commenced teaching school in November, 1922; that she taught 6½ months for $65 per month, the next year 8½ months for $75 per month, the next year 8½ months at $80 per month; that she used practically all of her earnings in paying the family expenses, of which she kept no account, and the amount of which she could not state, further than that the amounts paid, together with $1,000 which defendants testified the father had agreed to pay the daughter if she went through high school, as she did, amounted to more than the amount of the mortgage assigned to her.

. . The daughter testified that she made the payments for family expenses, some in cash and some in personal checks; that she had some of the checks, but not all of them. She appears to have had part of the checks in court, but plaintiff did not call for them. She had arrived at the age of eighteen before she got her first salary check. Her testimony is that she paid these expenses on the understanding that she was to be repaid; that her mother helped her with her clothes (her mother being the owner of a 160-acre farm, clear), but her father furnished nothing. She boarded at home. The value of her board and lodging is not shown. She also testified that she had a Shetland pony, that sold for $75, and a mule, sold for $100, and that her father had sold them, and got the money, when she was 13 or 14 years old. The father's testimony is to the same effect, and, in response to plaintiff's question on direct examination as to how much he figured she had spent of her wages for the support of the family until March 4, 1924, answered that he judged between $1,200 and $1,300. They testified that she had asked him for her money, and the assignment of the mortgage was made to pay her. The plaintiff drew from these witnesses circumstances tending to throw some doubt upon the truthfulness of their statements, but the witnesses were the plaintiff's witnesses. Their testimony was introduced by the plaintiff. *Malcolm Sav. Bank v. Mehlin*, 200 Iowa 970. The plaintiff has not proved by these witnesses or by any others, or by circumstantial evidence, the truth of his allegations, or that defendants' testimony is not true. There is no evidence that Frankie knew of or participated in any fraudulent purpose of her father's, nor is there evidence that she had notice of any intent on his part to defraud cred-

itors, or of facts that should put her on inquiry which, if made, would result in a discovery. Furthermore, the plaintiff says in argument that, from March 3, 1924 (the date of the assignment being March 8, 1924), to May 3, 1924, the father had the following sums of money:

"$3,500, left after paying mortgage on property mortgaged to brother, $1,800 draft from Whitney's Bank, $2,500 draft from Exchange State Bank of Stuart, and $1,700 draft from Exchange State Bank, making the total sum of $9,500."

He argues that the mother had a 160-acre farm, clear of incumbrance, had money and other property. Besides that, the plaintiff's evidence shows that on his judgment he sold on execution and purchased himself for $1,000 the property of the defendant Frank, which was worth $1,000 to $1,500 more. This property was redeemed by Frankie, to whom the equity was assigned, by the use of the $1,000 which her mother gave her for that purpose. Whether Frank A. Schmidt was otherwise indebted, or the amount of his debts, is not shown. Plaintiff puts forth these figures as showing that there was no occasion for the daughter's paying bills, and he argues that the burden of proof rested on the defendant to show each claim paid by the daughter for the father, the amount of each, and the person to whom paid; and that this she has failed to do. The trouble is that the plaintiff is making the attack, and it rests with him to prove his case before he can call on the defendants to prove theirs. The defendants offered no evidence, and they were not bound to; for the plaintiff not only did not prove insolvency at the time of the transfer, but claims in argument (inferentially, at least) the opposite state of affairs. Plaintiff did not prove his allegation that the assignment was made "without paying any consideration therefor whatsoever," but the evidence offered by him shows the contrary. Plaintiff wholly failed, as has been noted, to prove any fraudulent participation by Frankie or notice to her of any fraudulent intent on the part of her father. Fraudulent intent on his part at the time of the assignment is, to say the least, left in doubt. Without any further detailing of the evidence, it is sufficient that the plaintiff has wholly failed to make out a prima-facie case. The allegation of total want of consideration did not call upon defendants to prove the value of the consideration which, by the plaintiff's evidence, was in

fact paid. Plaintiff's allegation was not that the consideration was inadequate, and that as to the excess of value received by Frankie over the amount paid the conveyance was fraudulent. *Millhiser & Co. v. McKinley, Rangeley & Co.*, 98 Va. 207 (35 S. E. 446). See, also, *Malcolm Sav. Bank v. Mehlin*, 200 Iowa 970. Whether or not the agreement to pay the daughter $1,000 if she would go through high school would be such a consideration as to support the transaction, in whole or in part,—whether it was a merely moral consideration, and if so, its sufficiency,— need not be determined. See *Cottrell v. Smith*, 63 Iowa 181; *Gamet & Ogden v. Simmons*, 103 Iowa 163, 164; 13 Corpus Juris 358.—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.